IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES,

    Plaintiff,

v.                                                          Case No. 1:21-cr-01070-WJ-1

JUSTIN STEPP,

    Defendant.

**MEMORANDUM OPINION AND ORDER ON THE SENTENCING OF DEFENDANT**

    Defendant Justin Stepp was convicted of being a felon in possession of a firearm on April 21, 2022. Doc. 105. After a series of objections and amendments to his presentence report ("PSR"), his offense level was calculated at 20 (Doc. 126 at 7), his criminal history score was calculated at 19 for a criminal history category of VI (*id.* at 16), producing a United States Sentencing Guidelines ("Guidelines") range of 70 to 87 months of imprisonment (*id.* at 22). Defendant renewed his objections to the inclusion of two offenses in his criminal history, which he argues are beyond the fifteen-year lookback period. Doc. 124 at 4. Removing these two offenses, Defendant argues, means that he has no countable crimes of violence and therefore should only have an offense level of 12, yielding a Guidelines sentence of 30 to 37 months. *Id.* at 6–7.

    The Court held a hearing to examine the timing of the two disputed offenses. Doc. 128. At this hearing, the United States brought a witness, Ms. Denise Chavez, who testified about how the New Mexico Corrections Department calculates defendants' release dates. *Id.* Having reviewed the briefing and exhibits by the parties, Ms. Chavez's testimony, and the applicable law, the Court finds that the two disputed offenses fall within the fifteen-year lookback period. Docs. 133, 134. As a result, the Court determines the appropriate Guidelines range to be 70 to 87 months. *Id.* Based

on the facts of the case, the Court finds that a sentence within the Guidelines range is sufficient but not greater than necessary to satisfy the goals of sentencing, and therefore, the Court sentences Defendant to a term of incarceration of 72 months.

## BACKGROUND

On April 21, 2022, Defendant was convicted of being a felon in possession of a firearm. Doc. 105. The offense took place on February 7, 2021. Doc. 20. As a result, the parties and the Court began to look more closely into Defendant's criminal history to determine the appropriate sentencing range under the Guidelines. In 2002, Defendant was convicted of voluntary manslaughter and robbery and received a sentence of five years—six years on the manslaughter charge, three years running consecutively on the robbery, but four of these nine total years suspended. Doc. 126 at 7–9; Doc. 117-2.

While incarcerated for the 2002 offenses, Defendant picked up a new voluntary manslaughter charge for involvement in the strangulation of his cellmate; this new conviction was finalized on March 28, 2006. Doc. 126 at 10. The 2006 conviction itself is not at issue in this case. It resulted in a one-year sentence that was completed more than ten years after the instant offense and therefore does not count toward Defendant's criminal history. However, because the offense leading to the 2006 conviction took place while he was already incarcerated, Defendant never left the correctional facility after the term of his 2002 offenses ended; he immediately began his next term for the new voluntary manslaughter charge.

The issue in this case is exactly *when* the term of his 2002 offenses ended and the term of his 2006 offense began. The date of conviction for the 2006 offense was March 28, 2006, and the judgment makes no mention of whether the 2006 sentence runs consecutively or concurrently with the 2002 sentence. Doc. 117-3 at 4; Doc. 135 at 27. The parole discharge date on the good time

figuring sheet for the 2002 offenses is listed as February 16, 2006. Doc. 117-2. Similarly, the amended judgment for the 2006 offense states that Defendant shall receive presentence credit on the 2006 offense beginning on February 17, 2006, when the arrest warrant for the 2006 offense was served on him. Doc. 117-3 at 5.

However, on the good time figuring sheet for the 2006 offense, Defendant received three months of pre-sentence credit before his sentence officially began on March 28, 2006. Doc. 117-4. This sheet would suggest that he began receiving credit for the conviction on December 28, 2005—and therefore, raises the possibility that the term of incarceration for his 2002 offenses could have been over by that date.

## LEGAL STANDARD

### I. Sentencing Factors

Every federal sentencing should begin with a Guidelines calculation as an "initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). Although they were once mandatory, the Guidelines have been advisory for well over a decade. *United States v. Booker*, 543 U.S. 220, 245 (2005). Still, this initial calculation matters—it is the "benchmark for the entire sentencing process[.]" *United States v. Brown*, 974 F.3d 1137, 1144 (10th Cir. 2020) (citation omitted). A judge may depart from this range based on the factors outlined in Part 5K of the Guidelines—substantial assistance to authorities, extreme conduct, aberrant behavior, and so on—or may vary upward or downward based on the sentencing factors in 18 U.S.C. § 3553(a). The overarching aim is to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a). The purposes of sentencing are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant;

and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). To accomplish these purposes, the Court must consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the dictates of the sentencing guidelines and Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims of the offense. *Id.* § 3553(a).

II.     **Felon in Possession Base Offense Level**

For felon in possession of a firearm cases, the Guidelines set the base offense level at 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). Only offenses for which a defendant receives criminal history points qualify here. *Id.* § 2K2.1 n.10. Otherwise, an individual who committed a firearm possession offense as a "prohibited person" faces a base offense level of 14. *Id.* § 2K2.1(a)(6). A prohibited person is any individual described in 18 U.S.C. § 922(g)—including, as relevant here, a felon. *See id.* § 2K2.1 n.3. An individual who is not a prohibited person but who otherwise unlawfully transports firearms in interstate commerce receives a base offense level of 12. *See id.* § 2K2.1 n.4.

When determining criminal history, the Guidelines have a fifteen-year lookback period for sentences of imprisonment exceeding one year and one month, and a ten-year lookback period for sentences of imprisonment shorter than one year and one month. *Id.* § 4A1.2(e). Therefore, for the purposes of setting a base offense level of 20 under § 2K2.1(a)(4)(A), only offenses within the lookback period qualify.

## ANALYSIS

I.     **Base Offense Level**

The Court notes, as a preliminary matter, that Defendant's argument that he should have a base offense level of 12 does not hold water. *See* Doc. 124 at 6–7 ("Accordingly, having no countable crimes of violence, Mr. Stepp should be at a base offense level of 12. *See* USSG §2K2.1(a)(7)."). Section 2K2.1(a)(7), as described above, sets the base offense level at 12 for individuals who are not prohibited persons. For individuals who are prohibited persons, as Mr. Stepp is, the lowest possible base offense level is 14 under § 2K2.1(a)(6). While the passage of time can change what offenses are counted under a person's criminal history, it does not change a defendant's status as a prohibited person. Application Note 10, which states that offenses for which no criminal history points were assigned do not count toward the base level calculation, explicitly pertains to § 2K2.1(a)(4)(A), which outlines the standards for setting a base offense level of 20. But Application Note 10 does *not* make any statement regarding § 2K2.1(a)(6), which addresses prohibited persons, so there is no reason to believe that an individual stops being a prohibited person just because the predicate offense happened too long ago to count under the criminal history calculations. Accordingly, Mr. Stepp's base offense level cannot be lower than 14 given the facts of this case.

To determine whether the offense level should be 14 or 20, the Court looks to the question of whether Defendant's 2002 offenses fall within the fifteen-year lookback period. The exact end date of Defendant's incarceration for his 2002 offense is determinative here. If, based on the three months of presentence credit he received for the March 28, 2006 conviction, he began receiving credit for the new offense on December 28, 2005, then he finished serving time on the 2002 offenses by late December of 2005, and the 2002 offenses fall outside of the fifteen-year lookback period. But if the good time figuring sheet for the 2002 offenses is correct that he was released from custody for these offenses (to begin serving his term for the 2006 conviction) on February

16, 2006, then the 2002 offenses fall within the fifteen-year lookback period and count toward his base offense level in the current matter.

      The Court concludes that the 2002 offenses fall within the fifteen-year lookback period, and therefore, that they count toward Defendant's base offense level. Hearing testimony from Ms. Denise Chavez, a staff manager for Offender Management Services in the New Mexico Department of Corrections, indicates that several errors were made in calculating Defendant's presentence credit. Doc. 135 (transcript) at 23 (indicating that the original judgment and sentencing order gives Defendant 90 days of presentence credit for the period of time between February 17, 2006 and March 28, 2006, which does not add up properly); *id.* at 32–33 (indicating that someone made a mistake when making adjustment for amended judgment and sentencing order). The amended judgment and sentencing order grants Defendant presentence confinement credit from February 17, 2006 to August 18, 2006, which does not make sense if Defendant's sentence began on March 28, 2006; he should not have been receiving presentence credit for the time he was actively serving that same sentence. *See* Doc. 117-3 at 5; Doc. 117-4.

      These errors in granting presentence confinement credit indicate that something went wrong in the calculation process, and the Court will not compound the error by continuing to rely on the mistake when making its timekeeping determinations. Rather, what is consistent throughout the good time sheet for the 2002 offenses and the judgment and sentencing order for the 2006 offense is that the calculations began counting Defendant's time on the 2006 offense on February 17, 2006. Ms. Chavez testified that she typically uses the judgment and sentencing order to determine the date the sentence begins and the date the defendant was convicted. Doc. 135 at 15–16. For these reasons, the Court finds it most logical to consider February 17, 2006 to be the start date for when Defendant began to accrue time on his 2006 offense, and the day before, February

16, 2006, to be the final day of Defendant's sentence on the 2002 offense. February 16, 2006 is within fifteen years of the date of Defendant's present offense, which took place on February 7, 2021. As a result, the 2006 offense falls within the lookback period and counts toward Defendant's sentencing.

Because the 2006 offense is a felony, Defendant's base offense level for his present felon in possession case is 20. *See* U.S.S.G. § 2K2.1(a)(4)(A).

## II.     Variance

Defendant's base offense level is 20, and his criminal history category is VI, which leads to a Guidelines imprisonment range of 70 to 87 months. Doc. 126 at 22 ¶ 78. Here, despite the fact that the United States seeks an upward variance and Defendant seeks a downward variance, the Court has chosen a Guidelines sentence of 72 months. The Court's reasoning, including an examination of the 18 U.S.C. § 3553(a) factors, is already documented in the transcript of the sentencing proceedings. *See* Doc. 134 at 15. However, the following paragraph touches briefly on this rationale.

The United States sought an upward variance because Defendant already had a previous felon in possession case as well as a lengthy violent criminal history resembling that of armed career criminals. Doc. 134 at 6–7. Defendant responded that he has responded well to supervision and that the present felon in possession case was a victimless crime in which no one was harmed except Defendant himself. *Id.* at 8–9. The Court observes that all of these facts are true: an upward variance is inappropriate given Defendant's generally positive response to supervision, while a downward variance is inappropriate given Defendant's extensive criminal history and the fact that this is not his first felon in possession case. *Id.* at 14–15. Given the nonviolent nature of the offense but the serious criminal history at play in this case, a Guidelines sentence fits best. Additionally,

the need to avoid unwarranted sentencing disparities is satisfied by a Guidelines sentence, although of course sentences outside the Guidelines are still permissible in light of this factor depending on the facts involved. Accordingly, the Court finds that a sentence that is sufficient, but not greater than necessary, to satisfy the goals of sentencing is a commitment to the custody of the Bureau of Prisons for a term of 72 months.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE